FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2012 JUL 30   AM 10 04

## IN THE UNITED STATES DISTRICT COURT

STEPHAN HARRIS, CLERK
CHEYENNE

## FOR THE DISTRICT OF WYOMING

LINDA JEAN MONTOYA,

      Petitioner,

      vs.

UNITED STATES OF AMERICA,

      Respondent.

Criminal Case No. 10-CR-206-F

Civil Case No. 12-CV-36-F

## ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

This matter is before the Court on Defendant/Petitioner Linda Jean Montoya's

("Petitioner") Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence by

A Person in Federal Custody. The Court has reviewed the filings and is fully informed in the

premises and FINDS and ORDERS as follows:

## BACKGROUND

On July 21, 2010, Ms. Montoya was charged by indictment with conspiracy to traffic

in methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count One),

and with using a telephone to facilitate a drug felony in violation of 21 U.S.C. § 843(b)

(Count Three). (Docket Report for Docket No. 10-CR-206-F, Doc. #42)(hereinafter "Doc.
# ___"). On August 3, 2010, Ms. Montoya had her arraignment and initial appearance and
pled not guilty to the charges. (Doc. #63 [minutes of arraignment]). Then on January 4,
2011, she reached a plea agreement with the Government. (Doc. #122). Pursuant to her plea
agreement, Ms. Montoya agreed that she would plead guilty to Count One and in exchange
the Government agreed to dismiss Count Three at the time of her sentencing. (*Id.*). In
addition, the plea agreement called for Ms. Montoya to forfeit $5,000 in drug proceeds. (*Id.*
at p. 6). The Government also agreed to recommend Ms. Montoya receive a three offense
level reduction under the Sentencing Guidelines to reflect her acceptance of responsibility,
and to recommend a sentence at the low end of the applicable guideline range. (*Id.* at p.5).
The Government further agreed to jointly recommend Ms. Montoya be recommended for the
Bureau of Prison's 500 hour residential drug abuse program. (*Id.* at p. 6).

On January 18, 2011, Ms. Montoya appeared before the Court to enter her guilty plea.
(Doc. # 137). After completing some preliminary matters and ensuring Ms. Montoya was
competent to proceed, the Court began the colloquy required by Rule 11, Fed. R. Crim. P.
The Court asked Ms. Montoya if she had an adequate opportunity to consult with her attorney
about the charges against her and to read and discuss the plea agreement with him before she
signed it. (Doc. #177 [COP Tr.] at p. 6). Ms. Montoya answered both questions in the

2

affirmative. (*Id.* at p. 6-7). Ms. Montoya further affirmed she understood the plea agreement, it represented all the agreements and understandings she had with the Government in connection with her proposed guilty plea, and her proposed guilty plea had not been induced by any threats against her or her family. (*Id.* at pp. 7-8).

The Court also explained to Ms. Montoya that if she had any questions on anything to please speak up so that those questions could be answered because it was the best time to get those questions answered. (*Id.* at p. 7). Ms. Montoya stated that she understood. (*Id.*). The Court informed Ms. Montoya she could step away and speak to her attorney at any time if she had any questions. (*Id.*). Ms. Montoya assured the Court she would advise the Court if she needed to speak to her attorney on any issue or question. (*Id.* at pp. 7-8).

Next, the Court covered the consequences Ms. Montoya would incur as a result of her conviction on Count One. (*Id.* at p. 9). Those included her loss of important civil rights, the fact the charge she was pleading to carried a minimum mandatory sentence of ten years, and that she could be facing a prison sentence of between ten years and life imprisonment. (*Id.* at p. 10). Ms. Montoya stated she understood those matters as well. (*Id.*). The Court also reviewed the possible fines Ms. Montoya faced, how long she would be on supervised release, and the $100 special assessment she would be required to pay. (*Id.* at pp. 10-11).

Again, Ms. Montoya signaled her understanding. (*Id*.). She also indicated her understanding of the $5,000 forfeiture provisions of her plea agreement. (*Id*. at p.11-12).

The Court discussed the possible application of the sentencing guidelines in her case. (*Id*. at p. 13). Ms. Montoya affirmed she had discussed the advisory sentencing guidelines with her attorney and how they could apply in her case. (*Id*.). The Court noted Ms. Montoya's probable base offense level would be 36, she would likely receive a three level reduction for acceptance of responsibility, and potentially could receive a further two level reduction under the "safety valve" provisions of federal law. (*Id*. at p. 13-14). The Court also explained that if she was "safety valve" eligible, then the Court could sentence Ms. Montoya to less than the ten year mandatory minimum. (*Id*. at p. 13). If all of that occurred, the Court estimated Ms. Montoya's ultimate sentencing range would be 108 to 135 months. (*Id*. at p. 14).

On the other hand, the Court warned Ms. Montoya if she did not meet the requirements to be "safety valve" eligible, her range could be 135-168 months. (*Id*.). Ms. Montoya confirmed her understanding of all these items. (*Id*. at p. 14-15). Finally, the Court advised Ms. Montoya that regardless of what her eventual sentence might be - whether higher or lower than either her attorney or she expected - she would not be allowed to withdraw her plea of guilty. (*Id*. at p. 15). Ms. Montoya stated she understood that as well. (*Id*.).

4

The Court then explained the constitutional rights she was giving up to plead guilty, and the elements of the conspiracy charge to which she was proposing to plead guilty. (*Id*. at pp. 16-19). Ms. Montoya stated that she understood all of this. (*Id*. at p. 19). Ms. Montoya provided a sufficient factual basis for her guilty plea, during which she admitted she had accompanied her co-defendant, and friend, Kimberly Croy on a trip from Casper, Wyoming to Chugwater, Wyoming. (*Id*.). The purpose of the trip was to obtain methamphetamine, and at the end of the day her expectation was that she would receive a portion of the methamphetamine to sell to her customers. (*Id*. at pp. 17-23). Following a further explanation of the presentence report process and sentencing, the Court accepted Ms. Montoya's formal plea of guilty to Count One and determined her guilty plea was competently entered, knowing and voluntary, and supported by a sufficient factual basis. (*Id*. at pp. 23-25). The case was set for sentencing. (*Id*. at p. 25).

Ms. Montoya's PSR was completed in early March of 2011. (PSR at p. 1). The PSR determined Ms. Montoya's base offense level under the Sentencing Guidelines at level 36. (*Id*. at p. 9, ¶ 20). That calculation was based on the fact that at the time she and Ms. Croy were arrested, law enforcement seized over 500 grams of methamphetamine from their vehicle, and later law enforcement seized two more pounds of methamphetamine from Ms. Croy's residence and one-half pound of methamphetamine from Ms. Montoya's residence.

5

(PSR at p. 7, ¶ 8). Her guideline range of Level 36 was also based on Ms. Montoya's historical drug activities with Ms. Croy, which equaled approximately six more pounds of methamphetamine. (*Id*. at p. 8, ¶ 11). The PSR also converted the cash seized from Ms. Croy and Ms. Montoya (about $40,000) into an equivalent amount of methamphetamine, about twenty ounces. (*Id*. at p. 8, ¶ 13).

The PSR writer determined Ms. Montoya satisfied the five requirements for "safety valve" sentencing, so the PSR proposed to subtract two offense levels from her base offense level pursuant to United States Sentencing Guideline (U.S.S.G.) § 2D1.1(b)(16). (*Id*. at p. 9, ¶ 21). The PSR further reduced Ms. Montoya's final offense level by three levels to reflect her acceptance of responsibility. (*Id*. at p. 10, ¶ 26). Ms. Montoya's total offense level was 31. (*Id*. at p. 10, ¶ 31). The PSR writer determined Ms. Montoya did not have any countable criminal history, so based on a total offense level of 31 and Criminal History Category I, Ms. Montoya's guideline sentencing range was 108-135 months. (*Id*. at p. 13, ¶¶ 54, 55).

On April 1, 2011, Ms. Montoya appeared before the Court for sentencing. (Doc. #374 [Sent. Tr.]). The Court noted, with the agreement of the parties, that there were no objections by either side with respect to the PSR's guideline calculations. (*Id*. at pp. 2-4). The Court then heard Ms. Montoya's counsel's argument for a further downward departure from the guideline range of 108-135 months. (*Id*. at p. 5).

6

In that regard, Ms. Montoya's counsel argued that while Ms. Montoya was plainly involved with Ms. Croy in the trafficking of methamphetamine, the nature and circumstances of her involvement were significantly overstated by a guideline range of 108-135 months. (*Id*. at pp. 5-9). Ms. Montoya's counsel argued that while it was probably correct as a legal matter to hold Ms. Montoya  responsible under the Guidelines for the total quantity of methamphetamine involved in the Chugwater transaction (some 500+ grams), Ms. Montoya really had no idea of the actual amount of methamphetamine involved in the transaction and no actual participation in the receipt of the methamphetamine. (*Id*. at pp. 6-8). Her counsel argued that despite her minimal role in that transaction, it accounted for 18,000 kilograms of the total of 25,000 kilograms of converted marijuana attributed to her for relevant conduct purposes. (*Id*. at p. 6). Ms. Montoya's counsel argued that she should be sentenced at offense level 27, Criminal History Category I, and should receive a 78 month sentence. (*Id*. at p. 9).

Ms. Montoya's counsel also explained why she did not receive consideration for a § 5K1.1 departure for substantial assistance and the difficulties he had in securing "safety valve" eligibility.  (*Id*. at pp. 13-15).  In response, the Government explained that Ms. Montoya was already getting a tremendous break from where she had started in relation to relevant conduct and with the application of "safety valve," Ms. Montoya was able to avoid the 120 month mandatory minimum sentence. (*Id*. at p. 11).  Additionally, the Government

7

noted that both counsel for the Government and Ms. Montoya had worked hard to get Ms. Montoya "safety valve" eligible and that application of the "safety valve" was "almost a gift" to Ms. Montoya. (*Id*. at pp. 11-12).

Ms. Montoya's counsel then explained that he was asking for a variance because the Government told him that Ms. Montoya did not have much to offer because she was caught with her supplier, Ms. Croy, and Ms. Montoya did not have information that was helpful to the Government, therefore she was not eligible for a § 5K1.1 reduction for substantial assistance. (*Id*. at pp. 11-12). Ms. Montoya's counsel argued she was essentially punished because she was not a major player in the drug conspiracy. (*Id*. at pp. 14-15). In response, the Government explained there is no right to proffer and cooperate with the Government and that a proffer is for the sole purpose of providing the Government with information for the investigation and prosecution of other persons. (*Id*. at p. 16). The Government went on to explain that "safety valve", on the other hand, allows a criminal defendant, with no criminal history and who meets other criteria, including telling the prosecutor all they know about the offense, to receive a sentence below the mandatory minimum. (*Id*. at p. 17). Through her written proffers, Ms. Montoya satisfied the requirements to receive "safety valve" sentencing. (*Id*. at p. 17). After this explanation, the Government made its recommendation

8

for a sentence at the low end of the of the applicable guideline range, 108 months imprisonment. (*Id*.).

Ms. Montoya then made her remarks and the Court announced sentencing. (*Id*. at p. 18). The Court stated the factors it considered in determining the appropriate sentence. (*Id*.). The Court commended Ms. Montoya on her lack of criminal history and her strong family connections. (*Id*. at pp. 18-19). The Court noted Ms. Montoya needed substance abuse treatment and made the recommendation for placement in the Bureau of Prisons' 500-hour Residential Drug Abuse Program. (*Id*. at p. 19). The Court stated that while Ms. Montoya's counsel made a compelling argument for a variance, the relational argument in terms of Ms. Croy cut both ways. (*Id*. at p. 20). The Court noted Ms. Montoya was an active distributor and it appeared Ms. Montoya was aware of the nature and scope of the conspiracy and the structure of the conspiracy. (*Id*.). The Court determined that with the application of "safety valve", the sentence was appropriate, in that it was no more than necessary but was sufficient. (*Id*.). The Court then imposed a sentence of 108 months imprisonment, 5 years of supervised release, no fine, and the forfeiture of $5,000. (*Id*. at pp. 21-25). The judgment incorporating the sentence was filed on April 4, 2011. (Doc. #154). Ms. Montoya did not file an appeal, therefore, her sentence was "final," for purposes of § 2255's one year limitation period, 14 days later, when the time expired for her to file an appeal under Rule 4(b), Fed.

9

R. App. P. See *United States v. Prows*, 448 F.3d 1223, 1227-28 (10th Cir. 2006). Ms. Montoya filed her § 2255 motion on February 16, 2012, well within a year of when her conviction became final, therefore her § 2255 motion is timely.

## DISCUSSION

In her motion for relief, Ms. Montoya claims her counsel was ineffective for 1) failing to help her cooperate with the Government to secure her a downward departure pursuant to U.S.S.G. §5K1.1 and for the preparation of "unprofessional" proffer statements; 2) failing to file a sentencing memorandum; 3) failing to make sure her PSR reflected an accurate picture of her life, including her accomplishments and family support; 4) failing to adequately explain "safety valve" to her; and 5) failing to properly prepare Ms. Montoya to speak on her own behalf, failing to have her family speak on her behalf and failing to provide information supporting a more lenient sentence. For relief, Ms. Montoya asks to serve the remainder of her sentence on home detention.

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). The standard of review applied to § 2255 motions is stringent. "Only

if the violation constitutes a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure can § 2255 provide relief." *United States v. Gordon,* 172 F.3d 753, 755 (10th Cir. 1999) (internal quotations omitted). The Court presumes the proceedings which led to defendant's conviction were correct. *See Parke v. Raley,* 506 U.S. 20, 29-30 (1992).

"Section 2255 is not available to test the legality of matters which should have been raised on appeal." *U.S. v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994). This rule applies even when the appeal has been waived. See *U.S. v. Frady*, 456 U.S. 152, 154 (1982). "A defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless [s]he can show cause for h[er] procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if h[er] claim is not addressed." *Allen,* 16 F.3d at 378. "[I]f the government raises procedural bar, the courts must enforce it and hold the defendant's claims procedurally barred unless cause and prejudice or a miscarriage of justice is shown." *Id*.

"A defendant may establish cause for h[er] procedural default by showing that [s]he received ineffective assistance of counsel in violation of the Sixth Amendment." *U.S. v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995)(citations omitted). "To establish a claim for ineffective assistance of counsel, a defendant must show that (1) h[er] counsel's performance

11

was constitutionally deficient, and (2) counsel's deficient performance was prejudicial." *Id*. (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Counsel's performance is deficient if the representation "falls below an objective standard of reasonableness." *Strickland,* 466 U.S. at 690. Prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"In analyzing whether counsel's alleged errors prejudiced petitioner, [the Court] must keep in mind the standard to be applied in assessing whether petitioner is entitled to an evidentiary hearing in federal court on h[er] ineffectiveness claim. First, the petitioner bears the burden of alleging facts which, if proved, would entitle h[er] to relief. Moreover, h[er] allegations must be specific and particularized; conclusory allegations will not suffice to warrant a hearing." *Hatch v. State of Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995) (overruled on other grounds by *Daniels v. U.S.*, 254 F.3d 1180, 1188 n.l (10th Cir. 2001)) (citations and quotations omitted).

## 1.    Ineffective Assistance of Counsel for 5K1.1 Downward Departure and Written Proffers

Ms. Montoya claims that her counsel was ineffective because he failed to give her the proper information and provide her with the opportunity to earn a § 5K1.1 departure. Ms. Montoya claims she had material information that was never offered and she had no

12

understanding of how to convey this information to her lawyer. Ms. Montoya states she had information regarding other people, places and events that would have been material if she had understood and been given the opportunity to share this information. Ms. Montoya asserts her counsel failed to inform her that she needed to take responsibility for her actions and discuss the events and involvement of others with the Government.

At the sentencing in this case, Ms. Montoya's counsel explained that she had submitted proffer letters, but the Government had determined they did not need the information provided by Ms. Montoya. (Doc. # 174 at p. 13). Ms. Montoya's counsel expressed his frustration that she could not get a reduction because of her limited role in the conspiracy and that they had asked to proffer, but the Government determined it did not need Ms. Montoya's assistance and she did not have much to offer. (*Id.*). Ms. Montoya was present during her counsel's statements and did not dispute these assertions at the time or ask the Court or her counsel any questions regarding her attempts to proffer. (*Id.*). Additionally, while asserting she had relevant information, she has not stated what the information was and there is no reason for the Court to believe this information would have changed the Government's mind regarding the value of Ms. Montoya's statements.

In fact, the Government explained the nature of a proffer and the difference between a proffer and a statement for purposes of receiving "safety valve" at the sentencing hearing.

13

(*Id*. at pp. 16-17). The Government explained there was no right to proffer and cooperate with the United States, that a proffer was for the sole purpose of providing the Government with information for the investigation and prosecution of other persons. (*Id*. at p. 16). The Government went on to explain "safety valve", on the other hand, allows a criminal defendant, with no criminal history and who meets other criteria, including telling prosecutors all they know about the offense, to receive a sentence below the mandatory minimum.

Ms. Montoya fails to establish any basis for finding her counsel was ineffective for failing to explain to her the necessity of cooperating with the Government and the benefits of a § 5K1.1 reduction. There is no evidence for the Court to find Ms. Montoya had any information the Government would have found useful, especially in light of Ms. Croy's proffer. Ms. Montoya failed to show there was any more her counsel could have done to get the Government to accept her proffer. For these reasons there is no basis to find her counsel was ineffective or that she was prejudiced by her counsel's actions.

Ms. Montoya also claims that her counsel was ineffective for the "unprofessional" written proffers. As explained above, the Government was not interested in obtaining information from Ms. Montoya. The written proffers were an attempt by her counsel to allow Ms. Montoya to receive a "safety valve" sentence, not for § 5K1.1 consideration. The

14

"safety valve" proffer was ultimately successful in qualifying Ms. Montoya for a "safety valve" sentence. (*Id*. at p. 11). In fact, the Government noted both Ms. Montoya's counsel and counsel for the Government worked hard to get a written proffer to qualify Ms. Montoya for "safety valve" sentencing. (*Id*.).

For all of these reasons, the Court finds there is no support for Ms. Montoya's claims her counsel was ineffective based on the written proffers. Through the written proffers, Ms. Montoya received a "safety valve" sentence below the ten-year mandatory minimum applicable to Ms. Montoya's offense in this case. Ms. Montoya's claims for ineffective assistance of counsel for failure to obtain a § 5K1.1 reduction and for the unprofessional proffers are **DENIED**.

## 2. Ineffective Assistance of Counsel - Failure to File a Sentencing Memorandum

Ms. Montoya also claims her counsel was ineffective for failing to file a sentencing memorandum on her behalf highlighting her success and seeking a more lenient sentence. While her counsel did not file a sentencing memorandum, he did make several arguments at the sentencing hearing for why Ms. Montoya should receive a more lenient sentence. Additionally, the PSR included information related to Ms. Montoya's supportive family, including her long relationship with her husband and her kids. The Court acknowledged all

15

of these positive factors, but Ms. Montoya's sentence was ultimately based on her involvement in the conspiracy.

There is no basis to find a sentencing memorandum would have been more successful than counsel's in court arguments. Ms. Montoya fails to show her counsel's failure to file a sentencing memorandum was unreasonable or that she suffered genuine prejudice. Ms. Montoya's claim for ineffective assistance of counsel for failure to file a sentencing memorandum is **DENIED**.

## 3.    Ineffective Assitance of Counsel - Failure to Prepare and Review PSR

Ms. Montoya also claims her attorney was ineffective for failing to properly review the PSR and failing to point out her many successes, including raising successful children and her long term marriage. Ms. Montoya claims her counsel spoke to the PSR writer, but never included her or her family in the discussion. Ms. Montoya asserts that her husband was contacted by the PSR writer, but had never been warned by her counsel to be candid.

At the change of plea hearing, the Court explained the advisory sentence would not be fully known until after the preparation of the PSR.    (Doc. # 177 at p. 13). The Court went on to explain the PSR would give the Court guidance on the nature of the offense and Ms. Montoya's criminal history. (*Id*.). The Court further explained how these factors could affect Ms. Montoya's sentence in the case. (*Id*. at p. 14). Then at the end of the hearing the

16

Court again addressed the importance of the PSR. The Court explained probation would interview Ms. Montoya and obtain information to capture any criminal history she may have. (*Id.* at p. 23). The Court explained that Ms. Montoya and her counsel would receive a copy of that report and they would have an opportunity to file objections or point out discrepancies. (*Id.*).

In considering Ms. Montoya's arguments, the Court is uncertain why Ms. Montoya's husband would need to be warned by her counsel to be candid with an officer of the Court. Certainly Ms. Montoya's husband should have been candid without any such warning. As for Ms. Montoya's other claims, there is no evidence that anything done by her counsel would have made any difference in the preparation of the PSR. The PSR took into account her relationship with her children and her husband. Additionally, the Court took this information into account at the sentencing. (Doc. # 174 at pp. 18-19).

Ms. Montoya fails to provide any evidence that her counsel's failure with respect to the PSR was unreasonable or prejudiced her in any manner. Ms. Montoya's claim for ineffective assistance of counsel for failure to prepare her and her family for the PSR is **DENIED**.

17

**4.     Ineffective Assistance of Counsel - "Safety Valve"**

Ms. Montoya claims that her counsel was ineffective for failing to properly explain the "safety valve" provisions to her. The Court agrees with the Government that this claim is completely without merit. Regardless of whether her counsel explained "safety valve" to her, Ms. Montoya received the full benefit of "safety valve" sentencing. Ms. Montoya fails to establish that she was prejudiced in any way by her counsel's failure to fully explain "safety valve" to her.

**5.     Ineffective Assistance of Counsel - Other Sentencing Issues**

Ms. Montoya's final claim relates to her counsel's failure to prepare her and her family for the sentencing hearing. Ms. Montoya claims that her counsel was ineffective for failing to properly prepare her to speak on her own behalf, failing to have her family speak on her behalf, and failing to provide information that would have supported a more lenient sentence.

Even assuming all of Ms. Montoya's claims are true and she would have been able to prepare a better allocution and her family would have spoken on her behalf, Ms. Montoya fails to demonstrate that it is likely such preparation would have changed the outcome at sentencing. Ms. Montoya fails to provide any information that could have been provided to

18

the Court at her sentencing that may have affected her sentence. There is no evidence to support a claim she was prejudiced by her counsel's failure to prepare her for sentencing.

Ms. Montoya also claims her counsel was ineffective for failing to argue for a combined sentence, allowing her to spend some portion of her sentence in home confinement. Ms. Montoya's sentence was in Zone D of the Sentencing Table, therefore the minimum term must be satisfied by a sentence of imprisonment without the use of any of the imprisonment substitutes. U.S.S.G. § 5C1.1(f), note 9. Ms. Montoya was not eligible for a sentence including home confinement.

For these reasons Ms. Montoya fails to establish she was prejudiced by any of her counsel's alleged errors. Ms. Montoya's claims for ineffective assistance of counsel for failure to properly prepare her and her family for the sentencing hearing and for failure to request an alternate sentence are **DENIED**.

## CONCLUSION

For all the above stated reasons, Ms. Montoya's § 2255 motion is without merit and is DENIED. The files and record in this case conclusively establish that Ms. Montoya is not entitled to any relief. Accordingly, no evidentiary hearing is required. *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988)(no hearing required where § 2255 motion may be resolved on review of record before the Court).

19

A certificate of appealability (COA) may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  For the reasons set forth above, Ms. Montoya cannot make the required showing and a COA should not issue in this action.

**IT IS ORDERED** that Ms. Montoya's Motion Under 28 U.S.C. § 2255 is **DENIED**;

**IT IS FINALLY ORDERED** that a certificate of appealability shall not issue.

Dated this __30th__ day of July, 2012.

Nancy D. Freudenthal
Chief United States District Judge

20